[No. 25344–1–I.   Division One.   April 15, 1991.]

NORHAWK INVESTMENTS, INC., *Appellant,* v. SUBWAY SANDWICH SHOPS, INC., ET AL, *Defendants,* DOCTOR'S ASSOCIATES, INC., *Respondent.*

*John L. Hay* and *Hay & Wales,* for appellant.

*John Woodbery* and *Rutherford & Woodbery, P.S.,* for respondent.

GROSSE, C.J.—Doctor's Associates, Inc. (DAI) is a franchisor of fast–food restaurants under the trade name "Subway". Subway Sandwich Shops, Inc. (SSS) is a separate corporation which leases commercial property and then

subleases the property to DAI's franchisees. Norhawk Investments, Inc. (Norhawk) brought this action against DAI after unsuccessful attempts to collect on a judgment it had obtained against SSS. Norhawk appeals from the trial court's judgment dismissing its complaint against DAI.

In 1967, Doctor's Associates, Inc., was incorporated in Connecticut. DAI is a franchisor of fast–food restaurants throughout the country under the trade name of "Subway". In 1983, SSS was incorporated in Connecticut. SSS leases commercial property and then subleases the property at cost to DAI's franchisees. SSS has no substantial assets, employees, or substantial bank account balances. It has a policy of not providing financial statements to anyone, including landlords, and will look elsewhere for a location if the landlord refuses to rent the premises without them. Frederick DeLuca and Peter Buck are the sole shareholders of DAI and SSS. DeLuca is an officer of both companies and makes ultimate management decisions for both. The employees of DAI are paid by DAI but act by specific assignment for SSS at DeLuca's direction.

On March 9, 1984, DAI entered into a franchise agreement with George Cappiello. On May 25, 1984, SSS leased commercial property at the Greenwood Plaza from Bantz, Trace & Associates (BTA) and then sublet the premises to Cappiello on June 20, 1984. Cappiello agreed to make the lease payments directly to BTA, the landlord.

In 1985 Norhawk Investments, Inc., a Washington corporation, purchased the Greenwood Plaza from BTA. The purchase agreement contained contingencies, including the right to approve the leases on the Plaza. Prior to the sale, Charles Hawk, Norhawk's representative, was introduced to Cappiello as the franchisee. The sublease agreement disclosed the fact that DAI was the franchisor. However, Hawk made no inquiries with respect to the franchisor. Rather, he assumed that because of the use of the trade name Subway, the franchisor and the lessee were one and the same company. The sale closed in June of 1985 and all the leases on the Plaza were assigned to Norhawk.

In October of 1985 Cappiello defaulted on the lease, making only partial payments through May of 1986, and abandoned the premises which was then "disidentified" as a Subway franchise by removal of all Subway nomenclature. In October of 1986, Norhawk brought an action against Cappiello and SSS for breach of the lease. On May 29, 1988, Norhawk was awarded a default judgment against SSS in the sum of $54,895.22. After unsuccessful attempts to collect on the judgment, Norhawk discovered that DAI was the franchisor, not SSS.

On August 8, 1988, the trial court denied Norhawk's motion to collect the judgment from DAI, and granted Norhawk leave to file an amended complaint. After a trial to the court, findings and conclusions were entered resulting in the dismissal of Norhawk's complaint against DAI. The trial court concluded that DAI was not the alter ego of SSS and that disregard of the corporate form of DAI was not necessary to prevent an unjustified loss to Norhawk. This appeal followed.

The issue presented is whether the trial court erred by determining that DAI was not liable to Norhawk based on a corporate disregard theory.

█ █ Norhawk urges this court to disregard the two corporate entities and hold DAI subject to liability for the judgment Norhawk obtained against SSS. "The question whether the corporate form should be disregarded is a question of fact." *Truckweld Equip. Co. v. Olson,* 26 Wn. App. 638, 643, 618 P.2d 1017 (1980). Here, the trial court resolved the issue favorably to DAI. That ruling must stand if it is supported by substantial evidence. *Truckweld,* at 643.

█ The doctrine of corporate disregard was set forth in *Morgan v. Burks,* 93 Wn.2d 580, 585, 611 P.2d 751 (1980). "The corporate entity is disregarded and liability assessed against shareholders in the corporation when the corporation has been intentionally used to violate or evade a duty

.owed to another."[1] The court's statement of the doctrine identifies two essential factors: (1) the corporate form must be intentionally used to violate or evade a duty and (2) disregard must be "'necessary and required to prevent unjustified loss to the injured party.'" *Meisel v. M&N Modern Hydraulic Press Co.*, 97 Wn.2d 403, 410, 645 P.2d 689 (1982) (quoting *Morgan*, at 587).

"With regard to the first element, the court must find an abuse of the corporate form." *Meisel*, at 410. The court in *Truckweld Equip. Co. v. Olson*, 26 Wn. App. at 644–45, stated that such an abuse generally involves "fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment." With respect to the second element, "wrongful corporate activities must actually harm the party seeking relief so that disregard is necessary. Intentional misconduct must be the cause of the harm that is avoided by disregard." *Meisel*, 97 Wn.2d at 410.

▮▮ Applying these elements to the facts in this case, the trial court found that no misrepresentations had been made. No assignment of error was made to this finding; as a result, it becomes the established fact on appeal. *Davis v. Department of Labor & Indus.*, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980). Norhawk concedes that no fraud was committed; however, it contends, citing cases outside our jurisdiction,[2] that deliberate undercapitalization of SSS is an abuse of the corporate form. Norhawk's argument is contrary to Washington case law which holds that the separate existence of a corporation should not be disregarded

---

[1]The doctrine can be applied in any situation in which the corporate form has been abused. Harris, *Washington's Doctrine of Corporate Disregard*, 56 Wash. L. Rev. 253, 254 (1981). In the instant case, Norhawk is arguing that DAI is the alter ego of SSS and that SSS should therefore be disregarded and liability assessed against DAI.

[2]*West v. Costen*, 558 F. Supp. 564 (W.D. Va. 1983); *Giblin v. Murphy*, 97 A.D.2d 668, 469 N.Y.S.2d 211 (1983); *Amfac Mechanical Supply Co. v. Federer*, 645 P.2d 73 (Wyo. 1982).

solely because its assets are not sufficient to discharge its obligations. *Meisel,* at 411.

Norhawk contends that it was harmed by the trial court's conclusion that DAI and SSS are separate corporations. Norhawk contends that DAI should not be allowed to manipulate the finances of SSS in such a way that it would at all times be judgment proof.

Norhawk's argument is without merit. Although Norhawk may have been harmed, harm alone does not create corporate misconduct. *Meisel,* 97 Wn.2d at 410–11. "The absence of an adequate remedy alone does not establish corporate misconduct." *Meisel,* 97 Wn.2d at 411. The facts in the instant case do not establish any intentional misconduct. On the contrary, the unchallenged findings and conclusions are contrary to Norhawk's argument that DAI was intentionally manipulating the finances of SSS to avoid liability to Norhawk. The trial court found that DeLuca made ultimate management decisions for each corporation, that employees of DAI acted by specific assignment for SSS at DeLuca's direction, and that the shareholders of SSS controlled its actions in entering the lease with BTA for their own business purposes.

It is also well established that "[t]he purpose of a corporation is to limit liability." *Meisel,* 97 Wn.2d at 411. The trial court found such an intent in the instant case. In another finding to which no error has been assigned, the trial court found that the owners of DAI and SSS had legitimate business reasons for designating SSS to sign the lease with BTA that did not constitute the evasion of its duty on the lease, including: "(1) DAI's recent election to Sub Chapter S Corporation status for tax purposes; (2) Limitation of liability to the shareholders to the assets of SSS; and (3) Control or leverage on Franchisees by controlling the premises under lease."

Norhawk also makes much of the fact that there was a commingling of property and interests of SSS with DAI. However, the facts do not establish that this was done to

give the appearance that SSS and DAI were to function as one company. In fact, the sublease disclosed the fact that SSS was not the franchisor.[3] Even in *J.I. Case Credit Corp. v. Stark*, 64 Wn.2d 470, 392 P.2d 215 (1964), cited by Norhawk, where the facts indicate (a) one corporation was a wholly owned subsidiary of the other; (b) the secretary–treasurer of one was president of the other; (c) all employees of the subsidiary were paid by the parent corporation; (d) both companies had the same address, credit managers, lawyers, nonresident agents and auditors; and (e) the subsidiary was in business only to handle retail financing of the parent corporation, the court held that these facts were insufficient in themselves to enable a court to disregard the corporate entity and declare the two corporations to be identical in responsibility. *Stark,* 64 Wn.2d at 475. The *Stark* court went on to state:

> [T]here must be such a commingling of property rights or interests as to render it apparent that they are intended to function as one, and, further, to regard them as separate would aid the consummation of a fraud or wrong upon others.

*Stark,* 64 Wn.2d at 475. Here, although there was a commingling of property and interests, the facts do not establish that the corporations were intended to function as one or that to regard them as separate would aid the consummation of a fraud or wrong upon others. *Stark* is also factually distinguishable from this case.

In *Stark,* the plaintiff, J.I. Case Credit Corporation (Credit), brought an action against Stark to foreclose on its chattel mortgage. The mortgage had been executed by

---

[3]The sublease provided in relevant part:

"This Sublease is made by and between SUBWAY Sandwich Shops, Inc. ('Sublessor') and George J. Cappiello ('Sublessee') . . .

"(1) The Sublessor is the tenant . . .

" . . . .

"(6) The purpose of this Sublease is so that Sublessee can operate a SUBWAY Sandwich Shop under the terms of a Franchise Agreement with Doctor's Associates, Inc. . . .

"(7) The Sublessee may assign or sublease the premises only to a Franchisee of Doctor's Associates, Inc. for use as a sandwich shop . . .".

Stark to secure the balance of the purchase price of a combine sold by the Lacrosse Hardware Company. The J.I. Case Company (Case) had manufactured the combine. Credit subsequently purchased the note and mortgage from Case. *Stark,* 64 Wn.2d at 471–72. Notwithstanding the findings of the jury that the combine was defective and that Stark signed the note and mortgage upon condition that the combine would be placed in good working condition, the trial court granted a judgment of foreclosure. *Stark,* 64 Wn.2d at 473.

On appeal, Credit argued that it was a separate corporation, that any claim against Case could not be used as a defense to the foreclosure action, and that it was entitled to the immunities of a holder in due course without notice. The court rejected Credit's argument:

> For the reason that Case owed a duty to Stark under its warranties, Credit cannot pose as a holder in due course and thus permit Case to escape its responsibilities. For the purpose of this suit, the corporate identities are one and the same. Although each of the items of identity may, in itself, be but a link in a chain to join the two corporations, *the final connection is established by the duty owed.* To hold otherwise would result in a wrong being perpetrated upon Stark.

(Italics ours.) *Stark,* 64 Wn.2d at 478. In the instant case, unlike in *Stark,* DAI did not owe a duty to Norhawk.

Norhawk also relies upon *Platt v. Bradner Co.,* 131 Wash. 573, 230 P. 633 (1924) to support its claim. *Platt,* however is distinguishable. *Platt* involved an action brought by a dairy farmer against two corporations jointly, the Bradner Company and the Canyon Milk Products Company, on the theory that both corporations were liable for money the Canyon Milk Products Company owed to the dairy farmer. *Platt,* 131 Wash. at 574. The court held that the Bradner Company owed a duty to the customers who dealt with the Canyon Milk Products Company because of the Bradner Company's representations that the debt would be guaranteed by it. *Platt,* 131 Wash. at 580. In the

instant case, unlike in *Platt,* DAI did not make any representations that it would guarantee the lease between SSS and BTA or Norhawk.

In conclusion, Norhawk has failed to present facts which satisfy the 2–prong test set forth in *Meisel.* Although Norhawk may have been harmed by the dissolution, harm alone does not create corporate misconduct. *Meisel,* 97 Wn.2d at 410–11. "Separate corporate entities should not be disregarded solely because one cannot meet its obligations." *Meisel,* 97 Wn.2d at 411. On the basis of the record before this court, a corporate disregard theory cannot be maintained.

We affirm the decision of the trial court.

PEKELIS and BAKER, JJ., concur.