# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOON KIM; P.D.Q. INCORPORATED, dba P.D.Q. DELI MART, | ) ) ) | No. 70063-4-I |
| | ) | DIVISION ONE |
| Respondents, | ) ) | |
| v. | ) ) | |
| ALBERT D. ROSELLINI, JR., and VICKI ROSELLINI, husband and wife, | ) ) | UNPUBLISHED |
| | ) ) | FILED: August 11, 2014 |
| Appellants. | ) ) | |

Cox, J. — A corporate entity may be disregarded and liability imposed against its shareholders when they intentionally use the corporation to "violate or evade a duty owed to another" and disregard is "necessary and required to prevent unjustified loss to the injured party."[1] Here, the findings of fact by the superior court amply support the requirements to disregard the corporate entity and impose personal liability against the corporation's shareholders, Albert and Vicki Rosellini (collectively the Rosellinis). We affirm.

In 2001, Joon Kim purchased P.D.Q. Inc. dba P.D.Q. Deli Mart. P.D.Q. is a convenience store that sells gasoline to retail customers.

---

[1] Meisel v. M & N Modern Hydraulic Press Co., 97 Wn.2d 403, 409-10, 645 P.2d 689 (1982) (internal quotation marks omitted).

At the time of purchase, the prior owners and Fortune Oil Company Inc., a Washington corporation, were parties to a Shell Branded Retailer Contract (gasoline supply contract). The Rosellinis were the sole shareholders and owners of Fortune Oil, which sold gasoline to the prior owners.

The prior owners assigned their interest in the gasoline supply contract to Kim as part of the purchase of P.D.Q.

Based on the gasoline supply contract, Fortune Oil provided gasoline to Kim from 2001 to 2006. According to the contract terms, all credit card purchases by P.D.Q. customers were processed by Shell. Shell credited the purchases to Fortune Oil's account minus handling fees. Fortune Oil then credited this net to Kim.

By October 2006, Fortune Oil owed Kim a net of $32,076.20 from credit card purchases. After numerous demands, Fortune Oil failed to pay this balance to Kim.

Kim commenced an action in King County District Court against Fortune Oil, the Rosellinis, and another entity. The parties waived the gasoline supply contract's arbitration requirement.

Only Fortune Oil confessed to a judgment in favor of Kim in the amount of $32,076.20 plus interest, attorney fees, and costs. The confession of judgment stated that Fortune Oil's liability arose out of its breach of contract and failure to pay the credit card sales proceeds to Kim. The confession of judgment made no mention of the Consumer Protection Act (CPA).

It appears that the claims in that action for personal liability against the Rosellinis were dismissed. In any event, the confession of judgment does not mention them as judgment debtors.

In supplemental proceedings following entry of judgment against the corporation, Kim discovered information that allegedly proved that the Rosellinis had abused the corporate form. Kim then commenced this action in superior court against the Rosellinis, Fortune Oil, and The Fortune Company Inc., another Washington corporation that the Rosellinis own.

Kim alleged that the Rosellinis were personally liable to Kim on several grounds: piercing the corporate veil doctrine, unlawful distribution to a shareholder and related company, fraudulent transfer, and violation of the CPA.

At a bench trial for these claims, the Rosellinis did not appear to testify. Likewise, they did not present any witnesses. Kim presented the deposition testimony of Albert Rosellini and other evidence.

The superior court decided that it should pierce the corporate veil of Fortune Oil and that the Rosellinis were personally liable to Kim for the unpaid debt owed by that entity. The court entered its amended findings of fact and conclusions of law. It did not make any findings or conclusions that the CPA was violated.

Rather, when the superior court awarded fees, it stated that Fortune Oil's confession of judgment in the district court action included a confession to all claims, including a CPA violation, that were asserted in that case. Based solely

on this latter statement, the superior court reasoned that an award of attorney fees under the CPA was appropriate for the superior court action.

The Rosellinis appeal.

## PIERCING THE CORPORATE VEIL

The Rosellinis argue that the superior court erred when it pierced the corporate veil and held them personally liable to Kim for the unpaid indebtedness of Fortune Oil. We disagree.

Generally, the corporate form protects officers and shareholders from personal liability.[2] But the corporate entity may be disregarded in some circumstances.[3]

"'The question whether the corporate form should be disregarded is a question of fact.'"[4] This court reviews the trial court's findings of fact underlying corporate disregard for substantial evidence.[5] This court reviews de novo conclusions of law.[6]

---

[2] See Truckweld Equip. Co. v. Olson, 26 Wn. App. 638, 644, 618 P.2d 1017 (1980); Grayson v. Nordic Const. Co., Inc., 92 Wn.2d 548, 552-53, 599 P.2d 1271 (1979).

[3] Truckweld, 26 Wn. App. at 644.

[4] Norhawk Invs., Inc. v. Subway Sandwich Shops, Inc., 61 Wn. App. 395, 398, 811 P.2d 221 (1991) (quoting Truckweld, 26 Wn. App. at 643).

[5] Rogerson Hiller Corp. v. Port of Port Angeles, 96 Wn. App. 918, 924, 982 P.2d 131 (1999).

[6] Id.

"Separate corporate entities should not be disregarded solely because one cannot meet its obligations."[7] But the trial court was permitted to pierce the corporate veil and reach the Rosellinis if Kim demonstrated that (1) the corporate form was used to violate or evade a duty, and (2) the corporate form must be disregarded to prevent loss to an innocent party.[8]

For the first element, the court must find an abuse of the corporate form.[9] "[S]uch abuse typically involves 'fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment.'"[10]

In Morgan v. Burks, the supreme court explained that the first element can be met where "the liability-causing activity did not occur only for the benefit of the corporation, and the corporation and its controllers are thus 'alter egos.'"[11]

For the second element, the court must find that "wrongful corporate activities . . . actually harm the party seeking relief so that disregard is

---

[7] Meisel, 97 Wn.2d at 411.

[8] Wash. Water Jet Workers Ass'n v. Yarbrough, 151 Wn.2d 470, 503, 90 P.3d 42 (2004).

[9] Meisel, 97 Wn.2d at 410.

[10] Id. (quoting Truckweld, 26 Wn. App. at 645).

[11] 93 Wn.2d 580, 585, 611 P.2d 751 (1980) (emphasis added).

necessary."[12] "Intentional misconduct must be the cause of the harm that is avoided by disregard."[13]

Here, the superior court decided that the corporate form of Fortune Oil would be disregarded and "all liabilities of Fortune Oil, including the amount owed by Fortune Oil to Kim, are the personal and individual liabilities of Albert Rosellini and Vicki Rosellini, and Fortune Company."[14] Notwithstanding the reference to Fortune Company, a judgment was entered only against the Rosellinis.

Based on the amended written findings of facts and conclusions of law, it appears that the superior court determined that the first element of the corporate disregard doctrine was satisfied based on four independent grounds: (1) Fortune Oil and the Rosellinis were alter egos because they "functioned as one entity," (2) Fortune Oil breached a fiduciary duty owed to Kim, (3) Fortune Oil and the Rosellinis improperly made distributions to shareholders under RCW 23B.06.400, and (4) Fortune Oil and the Rosellinis fraudulently transferred assets in violation of RCW 19.40.051. We note that the superior court's oral ruling only focuses on the first and second of these grounds.

The superior court then determined that the second element of the doctrine was satisfied. The Rosellinis' intentional misconduct caused harm to Kim because there were not adequate funds to pay the amount owed to Kim under the gasoline supply contract.

---

[12] Meisel, 97 Wn.2d at 410.

[13] Id.

[14] Clerk's Papers at 406.

The Rosellinis only make arguments regarding the first element of the doctrine. Thus, we focus most of our comments on it.

*Alter Ego*

The Rosellinis argue that the superior court erred when it pierced the corporate veil on the basis that the Rosellinis commingled their assets with those of Fortune Oil and failed to maintain corporate records. It appears that they take issue with the court's finding that the "Rosellinis and Fortune Oil functioned as one entity" or that Fortune Oil was the Rosellinis' alter ego.

Washington recognizes the "alter ego" doctrine, which provides, "'Where a private person so dominates and controls a corporation that such corporation is his *alter ego*, a court is justified in piercing the veil of corporate entity and holding that the corporation and private person are one and the same.'"[15]

To determine whether a corporation is a private person's alter ego, Washington courts have looked to whether the private person commingled his or her property with that of the corporation.[16] "'[T]here must be such a commingling of property rights or interests as to render it apparent that they are intended to function as one, and, further, to regard them as separate would aid the consummation of a fraud or wrong upon others.'"[17]

---

[15] Standard Fire Ins. Co. v. Blakeslee, 54 Wn. App. 1, 5, 771 P.2d 1172 (1989) (quoting Pohlman Inv. Co. v. Va. City Gold Mining Co., 184 Wash. 273, 283, 51 P.2d 363 (1935)).

[16] Norhawk, 61 Wn. App. at 400-01; J.I. Case Credit Corp. v. Stark, 64 Wn.2d 470, 475, 392 P.2d 215 (1964).

[17] Norhawk, 61 Wn. App. at 401 (alteration in original) (quoting Stark, 64 Wn.2d at 475).

The supreme court has also considered whether "corporate records or formalities" were kept and whether there was any indication of "an overt intention by [the private person] to disregard the corporate entity."[18]

Here, the Rosellinis were the sole owners of Fortune Oil. The superior court made multiple findings that the Rosellinis commingled their personal assets and their other company's assets with Fortune Oil's assets. For example, finding of fact 10 states:

> In the federal tax returns and on the accounting ledgers, the transfers from Fortune Oil to the Rosellinis are listed as "shareholder loans". The Rosellinis freely commingled their bank accounts with Fortune Oil and Fortune Company's bank accounts to the degree that moneys were deposited and withdrawn from the company accounts and the personal accounts without any record whatsoever.[19]

Additionally, the superior court made a number of findings that the Rosellinis made loans or transfers to themselves and to other companies that they owned. These loans were not documented, and it is not clear whether they were paid back to Fortune Oil. Finding of fact 13 states:

> The Rosellinis have no record to support what happened to the loans and the money owed by [Albert Rosselini's] companies to Fortune Oil. The Rosellinis simply commingled their personal assets with Fortune Oil and Fortune Company without regard for record keeping.[20]

---

[18] Grayson, 92 Wn.2d at 553.

[19] Clerk's Papers at 403.

[20] Id. at 404.

These challenged findings are supported by substantial evidence, including Albert Rosellini's deposition transcript and federal tax returns. The Rosellinis provided no other evidence at trial.

During his deposition, Mr. Rosellini explained that he made numerous transfers of funds between Fortune Oil's account and his personal account and Fortune Company's account. He stated that he only kept records for "some" of these transactions. He also explained that Fortune Oil loaned $500,000 to Ferndale Truck Stop, another one of his companies, but this money was never paid back to Fortune Oil. He also stated he did not know what happened to loans to shareholders listed in his federal tax returns.

Additionally, as stated in findings of fact 10 and 13, the superior court found that Fortune Oil did not keep many corporate records. Finding of fact 7 also focuses on the lack of records:

> The corporate records of Fortune Oil are sparse. Albert Rosellini testified that he kept few, if any, record of any of the financial transactions between himself and Fortune Oil, and between Fortune Oil, Fortune Company and Ferndale Gas.[21]

This challenged finding is also supported by Mr. Rosellini's deposition transcript.

Given these findings of fact, the superior court properly decided that the Rosellinis and Fortune Oil were functioning as one entity.

Moreover, determining that the Rosellinis and Fortune Oil were separate would aid in the "'consummation of a fraud or wrong upon others.'"[22] As the

---

[21] Id. at 402.

[22] Norhawk, 61 Wn. App. at 401 (quoting Stark, 64 Wn.2d at 475).

superior court stated, "But for the commingling of assets of Fortune Oil with that of the Rosellinis, there would have been adequate funds to pay the creditors of Fortune Oil, including Kim."[23]

In sum, the superior court properly pierced the corporate veil and held the Rosellinis personally liable to Kim for the unpaid amounts owed by Fortune Oil.

The Rosellinis argue that each financial transaction, including loans or transfers, was recorded in QuickBooks. They point to a QuickBooks printout of one of their accounts to show how a loan was recorded. While the printout appears to show movement of funds between Fortune Oil and Mr. Rossellini, the purpose of the funds is not known and it is not clear that these funds were paid back.

Had the Rosellinis wished to add at trial to the testimony given at Mr. Rossellini's deposition, they could have done so. They did not, and the superior court was left only with the deposition testimony and other evidence submitted at trial. The evidence at trial was sufficient to support the court's findings.

Moreover, an appellate court "will not 'disturb findings of fact supported by substantial evidence even if there is conflicting evidence.'"[24] Because there is substantial evidence regarding the lack of records to document the loans, whatever QuickBooks purports to show by way of conflicting evidence does not alter the analysis.

_____

[23] Clerk's Papers at 406.

[24] McCleary v. State, 173 Wn.2d 477, 514, 269 P.3d 227 (2012) (quoting Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010)).

The Rosellinis also assert that the fact that Mr. Rosellini could not explain the loans or transfers is not evidence that they were improper. They point out that he had a bookkeeper and a professional CPA maintain his records, so it makes sense that he could not explain some of the loans or transfers. But, if he wanted others to explain the transfers at trial he had the opportunity to do so. For whatever reason, the Rosellinis chose not to present such witnesses at trial. The evidence that was presented at trial supports the superior court's findings. On appeal, we do not reweigh the evidence or evaluate a witness's credibility.[25]

The Rosellinis cite Meisel v. M & N Modern Hydraulic Press Co. to argue that Kim did not prove that the abuse of the corporate form involved fraud or misrepresentation, which is required to pierce the corporate veil.[26] But Meisel stated that "such abuse typically involves 'fraud, misrepresentation, or *some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment.*"[27]

Here, the superior court found that the Rosellinis were commingling and transferring funds in a way that prevented Kim from being paid money owed to him from the credit card purchases. This conduct appears to be a form of manipulation of the corporation to the Rosellinis' benefit and to Kim's detriment.

---

[25] Bale v. Allison, 173 Wn. App. 435, 458, 294 P.3d 789 (2013).

[26] Appellant's Opening Brief at 12-15 (citing Meisel v. M & N Modern Hydraulic Press Co., 97 Wn.2d 403, 645 P.2d 689 (1982)).

[27] Meisel, 97 Wn.2d at 410 (emphasis added).

Thus, the corporate disregard elements were met, and this argument is not persuasive.

Given that Fortune Oil was the Rosellinis' alter ego, which supports piercing the corporate veil, we need not reach the Rosellinis' arguments regarding breach of fiduciary duty, distribution to shareholders under RCW 23B.06.400, and fraudulent transfer under RCW 19.40.051.

## ATTORNEY FEES

The Rosellinis next argue that the superior court erred when it granted attorney fees to Kim under the CPA based on Fortune Oil's confession of judgment. In response, Kim asserts two separate bases to support the attorney fee award—a CPA violation and the gasoline supply contract. We conclude that neither of these bases support the attorney fee award.

"This court applies a two-part review to awards or denials of attorney fees: (1) [this] court reviews de novo whether a legal basis exists for awarding attorney fees by statute, under contract, or in equity and (2) the court reviews the reasonableness of an attorney fee award for abuse of discretion."[28]

### Fee Award Based on CPA

Kim argues that the superior court correctly determined that the Rosellinis personally violated the CPA, and this violation provides a basis for the award of attorney fees. But the superior court did not make any findings or conclusions determining that there was a CPA violation in its amended findings of fact and

---

[28] Hall v. Feigenbaum, 178 Wn. App. 811, 827, 319 P.3d 61, review denied, 180 Wn.2d 1018 (2014).

12

conclusions of law. Thus, we have no findings or conclusions on this issue to review.[29]

Rather, the superior court gave the following rationale for the fee award, which was based on the confession of judgment and the CPA:

> 4) The Complaint in District Court alleged a violation of the Consumer Protection Act. The Confession of Judgment by FORTUNE OIL COMPANY, INC. in the District Court was a *general* confession of judgment to the Complaint. It was signed by Albert Rosellini, President. **Therefore, FORTUNE OIL COMPANY, INC. confessed to judgment against it for all claims, including violation of the Consumer Protection Act.** Albert Rosellini, Jr. was the only officer and shareholder active in the corporation. Therefore, he participated and directed the acts of the corporation and is personally liable for the violations of the Consumer Protection Act which the corporation confessed to having committed. Under RCW 19.86 et seq. Plaintiff is awarded attorney's fees and costs. . . .[30]

It is unclear to this court what a "general" confession of judgment is. Confessions of judgment are authorized by statute and are designed to resolve disputes among willing parties.[31] A confession of judgment must be in writing and comply with certain requirements, including the following:

> (2) If it be for money due or to become due, *it shall state concisely the facts out of which the indebtedness arose*, and shall show that the sum confessed to be due, is justly due or to become due.[32]

---

[29] See, e.g., Berryman v. Metcalf, 177 Wn. App. 644, 659, 312 P.3d 745 (2013) ("Because the trial court made no findings regarding the specific challenged items, the record does not allow for a proper review of these issues."), review denied, 179 Wn. App. 1026, 320 P.3d 718 (2014).

[30] Clerk's Papers at 406-07 (emphasis added).

[31] RCW 4.60.050; see Pederson v. Potter, 103 Wn. App. 62, 68, 11 P.3d 833 (2000).

[32] RCW 4.60.060 (emphasis added).

Here, Fortune Oil entered into a confession of judgment. It agreed that it was liable to Kim for a total of $47,472.78. The confession of judgment stated the following facts to explain why the indebtedness arose:

> This consent and Confession of Judgment arises out of **Defendant's breach of Shell Branded Retailer Contract** ("Contract") dated October 7, 1996, which is incorporated herein by reference, entered by and between Defendant Fortune Oil Company, Inc., and Sung Bok No and Joon Deuk No, subsequently assigned to Plaintiffs Joon Bum Kim and P.D.Q. Incorporated, and **Defendant's failure to pay the credit card sales proceeds to Plaintiffs**.[33]

By its plain terms, this confession of judgment only references breach of contract as a basis for liability. It does not mention the CPA as a basis for anything. Thus, the CPA should not have been a basis either for the underlying amount owed or for any award of fees predicated on the confession of judgment in the district court.

Kim relies on the same basis to request fees on appeal. For the same reasons, we deny this request.

*Fee Award Based on Gasoline Supply Contract Provision*

Alternatively, Kim argues that he is entitled to attorney fees based on the gasoline supply contract provision that addresses fees.[34] We disagree.

The gasoline supply contract between Fortune Oil and Kim states that attorney fees shall be awarded to the prevailing party:

---

[33] Clerk's Papers at 344 (emphasis added).

[34] See id. at 45 ("In the alternate, Kim and PDQ are entitled to attorney's fees and costs based on the gasoline supply contract, which mandates that the prevailing party is entitled to attorney's fees and costs. Ex. 1, Para. 22.").

14

22. CHOICE OF LAW, ARBITRATION

> This contract will be governed by the laws of the State of Washington, and the venue of any dispute shall be in Seattle, Washington. In the event of any dispute regarding this contract, the parties agree to arbitrate the matter with the American Arbitration Association, using the Commercial Rules, and shall abide the decision of the arbiter. ***The prevailing party to any dispute brought before the arbiter, shall be entitled to attorneys fees and costs.***[35]

But by its plain terms, the attorney fees provision limits an award to "disputes brought before [an] arbiter." Because no arbiter was involved in this litigation, no award of fees is permitted under the plain words of this contract provision.

In sum, we conclude that the trial court did not properly award attorney fees. Thus, we reverse this award.

## JUDGMENT IN FAVOR OF ATTORNEY

Finally, the Rosellinis argue that the superior court erred when it named Karl Park, the Rosellinis' attorney, as a judgment creditor and granted judgment in his favor. They assert that this was error because he was not a party to the action. Notably, the Rosellinis fail to claim any prejudice. And neither party provides any authority to support their arguments regarding this issue. Accordingly, we do not address this claim any further.[36]

---

[35] Ex. 1, ¶ 22 (emphasis added).

[36] RAP 10.3(6); McKee v. Am. Home Prods. Corp., 113 Wn.2d 701, 705, 782 P.2d 1045 (1989).

We affirm the judgment, except for the award of attorney fees, which we reverse. We deny Kim's request for attorney fees on appeal.

_Cox, J._

WE CONCUR:

_Schindler, J._            _Becker, J._