2015 AUG 17 AM 8: 3


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CECO CONCRETE CONSTRUCTION, )
LLC, )
                                  )     DIVISION ONE
        Respondent, )
                                    )     No. 72047-3-I
        v. )
                                    )     UNPUBLISHED OPINION
SUZANNE MANCHESTER, )
                                    )
        Appellant. )     FILED: August 17, 2015
_____ )

DWYER, J. — The equitable remedy of corporate disregard is not meant to punish informality in corporate governance but, rather, to hold accountable insiders who plunder corporate assets at the expense of creditors. In disregarding the corporate form of Bedrock Floors, Inc., the trial court in this matter ruled, in effect, that the appellant and sole shareholder of Bedrock, Suzanne Manchester, plundered Bedrock's assets at the expense of its sole creditor, Ceco Concrete Construction, LLC. Given the existence of genuine issues of material fact, the trial court erred in so ruling. Consequently, the trial court erred in granting summary judgment in favor of Ceco, holding Suzanne personally responsible for the judgment Ceco previously obtained against Bedrock, and awarding attorney fees and costs to Ceco. Accordingly, we reverse all of these rulings and remand the cause for further proceedings.

I

Bedrock is a Washington corporation that was, for a time, in the business of providing concrete "flatwork." During that time, Suzanne's husband, Alan Manchester, served as the company's project manager. Suzanne is the sole shareholder, director, and officer of Bedrock.

In April 2010, Alan[1] was recruited by Ceco—a large, national concrete contractor in the business of providing concrete "vertical" construction services— "to begin and run a new flatwork division in Hawaii and eventually in its Northwest division." Alan agreed to join Ceco and signed an employment contract on May 4, 2010. At this time, Bedrock had three outstanding "flatwork" projects in Hawaii. Ceco was to assume Bedrock's existing business and Alan was to continue to oversee the projects as a Ceco employee.

Shortly after Alan was hired, Ceco representatives approached him and asked that Bedrock remain in business and subcontract the work on the outstanding projects to Ceco. Alan informed Ceco that under such an arrangement he would have to keep Bedrock operating as a company and that Bedrock would incur costs of doing business that would not otherwise have been incurred. Nevertheless, after Ceco agreed to reimburse Bedrock for these costs, an agreement was made by which Bedrock was to pass through to Ceco all payments received from the three outstanding projects, except for payments related to work that had been done by Bedrock prior to the start of Alan's employment with Ceco.

---

[1] We refer to Suzanne and Alan by their given names. No disrespect is intended.

Several years later, Ceco filed a demand for arbitration against Bedrock. As found by the arbitrator, the arbitration proceedings were initiated because Ceco and Bedrock "could not agree on what monies had been received by Bedrock that were due to be passed through to Ceco, and further could not agree on what Bedrock's costs were to 'keep its doors open' solely for benefit of Ceco."

The arbitrator found that Bedrock had established an express trust for the benefit of Ceco. The arbitrator further found that Bedrock, in its capacity as a trustee, was required to disburse all of the proceeds of Bedrock's outstanding contracts "either directly to Ceco or else in payment of the expenses of Bedrock to continue operations for the benefit of Ceco." Bedrock was ordered to account for all payments received from the three outstanding projects. When Bedrock eventually provided this accounting, the arbitrator found that Bedrock's "partial accounting" was "incomplete, erroneous and lacked backup detail for many of the charges claimed by Bedrock as offsets to Ceco's affirmative claim."

Following a two-day hearing, the arbitrator awarded as offset costs to Bedrock $65,621.66. However, the arbitrator found that Bedrock could not demonstrate that all of the payments from the three outstanding projects that it had withheld were expenses necessary to continue operations for the benefit of Ceco. Therefore, the arbitrator ordered Bedrock to pay Ceco $24,607.50. The arbitrator also awarded Ceco $66,996.82 in attorney fees.

On May 22, 2013, an order confirming the arbitration award was entered in favor of Ceco and against Bedrock in the principal amount of $91,604.32. However, Bedrock did not pay Ceco. According to Ceco, Bedrock failed to do so

because it was insolvent.

On January 30, 2013, Ceco filed a complaint against Suzanne individually and sought damages. Ceco asserted the following "causes of action": breach of fiduciary duty; breach of Washington's Uniform Fraudulent Transfer Act (chapter 19.40 RCW); unjust enrichment; and disregard of the corporate form. Ceco alleged that Suzanne had unlawfully transferred funds received from the prime contractors to herself.

During discovery, Ceco obtained Bedrock's financial records. These records revealed that payments from Bedrock's accounts had been made for a number of Suzanne's living expenses during the period of time in which Bedrock had agreed to transfer funds received on the three outstanding projects to Ceco. However, Suzanne testified that, even before Ceco approached Alan with an offer of employment, "Bedrock ended up paying almost all of the expenses related to Bedrock performing work in . . . Hawaii," including "many of the living expenses of my husband and I."

On April 4, 2014, Ceco moved for summary judgment on all of its claims. Ceco also moved the court for entry of an order holding Suzanne personally liable for the entire judgment entered on the arbitration award in favor of Ceco.

Suzanne brought a cross motion for summary judgment, seeking dismissal of Ceco's claims.

On May 9, 2014, the trial court granted Ceco's motion for summary

judgment on each of its claims, "except for actual fraudulent transfers."[2] It also ruled that Suzanne was Bedrock's alter ego and was, therefore, personally liable for the judgment entered on the arbitration award in favor of Ceco. Suzanne's motion for summary judgment was denied.

Thereafter, on June 2, the trial court awarded Ceco attorney fees on the basis of its ruling that Suzanne breached a fiduciary duty to Ceco.

Suzanne appeals from the grant of summary judgment in favor of Ceco, the denial of her summary judgment motion, and the award of attorney fees and costs in favor of Ceco.

II

Suzanne contends that the trial court erred in granting summary judgment in favor of Ceco. We agree. Owing to the presence of genuine issues of material fact, it was error for the trial court to disregard the corporate form of Bedrock, grant summary judgment in favor of Ceco, and hold Suzanne personally liable for the debts of Bedrock.

"A motion for summary judgment presents a question of law reviewed de novo." Nat'l Sur. Corp. v. Immunex Corp., 162 Wn. App. 762, 770, 256 P.3d 439 (2011). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The nonmoving party on

---

[2] Ceco does not challenge on appeal the trial court's denial of summary judgment on this claim.

summary judgment "must set forth specific facts showing that there is a genuine issue of material fact." Dicomes v. State, 113 Wn.2d 612, 631, 782 P.2d 1002 (1989). "Summary judgment is appropriate if in view of all of the evidence, reasonable persons could reach only one conclusion." Yankee v. APV N. Am., Inc., 164 Wn. App. 1, 8, 262 P.3d 515 (2011).

"In general, a corporation is considered a separate entity, even if it is owned by a single shareholder." Dickens v. Alliance Analytical Labs., LLC, 127 Wn. App. 433, 440, 111 P.3d 889 (2005). Notwithstanding this, the equitable remedy of "corporate disregard," though "not a freestanding claim for relief," may allow a court to reach the principals of a corporation and hold them personally responsible for abuses of the corporate privilege. Landstar Inway, Inc. v. Samrow, 181 Wn. App. 109, 125, 325 P.3d 327 (2014) (citing Truckweld Equip. Co. v. Olson, 26 Wn. App. 638, 643, 618 P.2d 1017 (1980)).

In order for a court to disregard the corporate form, "'two separate, essential factors must be established.'" Columbia Asset Recovery Grp., LLC v. Kelly, 177 Wn. App. 475, 486, 312 P.3d 687 (2013) (quoting Dickens, 127 Wn. App. at 440). "First, the corporate form must be intentionally used to violate or evade a duty." Meisel v. M & N Modern Hydraulic Press Co., 97 Wn.2d 403, 410, 645 P.2d 689 (1982). "Second, the fact finder must establish that disregarding the corporate veil is necessary and required to prevent an unjustified loss to the injured party." Dickens, 127 Wn. App. at 441.

"With regard to the first [factor], the court must find an abuse of the corporate form." Meisel, 97 Wn.2d at 410. "[S]uch abuse typically involves

'fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment.'" Meisel, 97 Wn.2d at 410 (quoting Truckweld, 26 Wn. App. at 645). However, "the law requires a showing of both disregard of the corporate form *and* that the disregard was done to avoid a duty owed to another." Rogerson Hiller Corp. v. Port of Port Angeles, 96 Wn. App. 918, 926, 982 P.2d 131 (1999). "If duty were to arise from abuse of the corporate form alone, the second part of the first [factor], 'to avoid a duty owed,' would be redundant." Rogerson Hiller, 96 Wn. App. at 926. Consequently, "[d]uty would always be created by an abuse of the corporate form such as commingling of the corporate interests." Rogerson Hiller, 96 Wn. App. at 926.

"With regard to the second [factor], wrongful corporate activities must actually harm the party seeking relief so that disregard is necessary." Meisel, 97 Wn.2d at 410. Moreover, "[i]ntentional misconduct must be the cause of the harm that is avoided by disregard." Meisel, 97 Wn.2d at 410. However, "[t]he absence of an adequate remedy alone does not establish corporate misconduct." Meisel, 97 Wn.2d at 411. Were it otherwise, the purpose of the corporate form— "to limit liability"—would be defeated. Meisel, 97 Wn.2d at 411.

Washington recognizes the "alter ego" theory of corporate disregard, which provides, "'Where a private person so dominates and controls a corporation that such corporation is his *alter ego*, a court is justified in piercing the veil of corporate entity and holding that the corporation and private person are one and the same.'" Standard Fire Ins. Co. v. Blakeslee, 54 Wn. App. 1, 5, 771 P.2d 1172 (1989) (quoting Pohlman Inv. Co. v. Va. City Gold Mining Co.,

184 Wash. 273, 283, 51 P.2d 363 (1935)). To determine whether a corporation is a private person's alter ego, Washington courts have considered whether the private person commingled his or her property with that of the corporation. J.I. Case Credit Corp. v. Stark, 64 Wn.2d 470, 475, 392 P.2d 215 (1964); Norhawk Invs., Inc. v. Subway Sandwich Shops, Inc., 61 Wn. App. 395, 400-01, 811 P.2d 221 (1991). "'[T]here must be such a commingling of property rights or interests as to render it apparent that they are intended to function as one, and, further, to regard them as separate would aid the consummation of a fraud or wrong upon others.'" Norhawk, 61 Wn. App. at 401 (alteration in original) (quoting Stark, 64 Wn.2d at 475). Our Supreme Court has also considered whether "corporate records or formalities" were kept and whether there was any indication of "an overt intention by [the private person] to disregard the corporate entity." Grayson v. Nordic Constr. Co., 92 Wn.2d 548, 553, 599 P.2d 1271 (1979). However, "informality in the operation of a closely held corporation [will not] lead to a disregard of the corporate entity if the informality neither prejudices nor misleads the plaintiff." Roderick Timber Co. v. Willapa Harbor Cedar Prods., Inc., 29 Wn. App. 311, 315, 627 P.2d 1352 (1981); accord Block v. Olympic Health Spa, Inc., 24 Wn. App. 938, 945, 604 P.2d 1317 (1979).

"'The question whether the corporate form should be disregarded is a question of fact.'" Norhawk, 61 Wn. App. at 398 (quoting Truckweld, 26 Wn. App. at 643). Nevertheless, judgment as a matter of law may be appropriate where the nonmoving party fails to offer evidence that creates an issue of material fact. CR 56(e).

It may be that Ceco would be entitled to summary judgment if it had shown, as a matter of law, that Bedrock was not entitled to have anyone physically present in Hawaii who owed a duty solely to Bedrock during the time in which the six contracts to which Bedrock was a party were being performed.[3] Ceco has not done so. Thus, assuming both that Bedrock was entitled to have Suzanne represent its interests in Hawaii and that Suzanne owed a duty only to Bedrock, we must consider whether she was required to pay out of pocket for the right to be in Hawaii during the performance of the six contracts. That is to ask, could Bedrock lawfully provide compensation to Suzanne under these circumstances?

We conclude that it was permissible for Bedrock to compensate Suzanne—in some way—for her involvement with the six contracts in Hawaii.[4] Because Suzanne was not drawing either wages or a salary from Bedrock during her time in Hawaii, the fact that some of her living expenses were paid for by Bedrock is not inherently problematic. Of course, if the *amount* of expenses which were reimbursed was unreasonable, then imposition of the equitable remedy of corporate disregard might be necessary to avoid unjustified harm to Ceco. However, this question was not resolved by the arbitrator. Whether the amount of these expenses was unreasonable presents questions of fact in need

---

[3] Completion of the three projects involved six contracts: three between Bedrock and each of the three prime contractors and three—one as to each project—between Bedrock and Ceco.

[4] In fact, during oral argument, counsel for Ceco conceded that Bedrock was entitled to spend something in order to support Suzanne.

of resolution.[5]

In the arbitration proceeding, it was found that Bedrock was not entitled to an offset from Ceco of all of Bedrock's purported business expenses. Based on the agreement between Bedrock and Ceco, the arbitrator found that Bedrock had incurred expenses in excess of $24,000 that Ceco was not obligated to reimburse. The arbitrator did not find, however, that this excess was, in itself, unreasonable or improper for Bedrock to incur as a business expense. Indeed, there was no need for such a finding—the focus of the dispute was the nature of the agreement between Bedrock and Ceco, not the relationship between Suzanne and Bedrock.

Nevertheless, Ceco contends, employing somewhat circular reasoning, the arbitrator's findings are dispositive in this action against Suzanne because she was the alter ego of Bedrock. As evidence of this, Ceco notes that Bedrock did not observe certain corporate formalities. A failure to observe corporate formalities, however, is not itself a sufficient reason to disregard the corporate form. Instead, it must be established that Suzanne intentionally abused Bedrock's corporate form to avoid a duty to Ceco and, further, that her actions did, in fact, cause harm to befall Ceco.

Contrary to Ceco's position, the record is not susceptible of only one

---

[5] In order to recover from Suzanne based on its claims of constructive fraudulent transfer, Ceco was required to show as a threshold matter that Bedrock did not receive "reasonably equivalent value" in exchange for the funds used to cover Suzanne's living expenses. RCW 19.40.041(a)(2); RCW 19.40.051(a). As explained herein, a trier of fact could find that it was, in fact, reasonable for Bedrock to pay for the living expenses incurred by Suzanne. The same is true with regard to whether Bedrock received "reasonably equivalent value" in exchange for these payments. Consequently, the trial court erred in granting judgment as a matter of law for Ceco on its constructive fraudulent transfer claims.

interpretation. There is evidence indicating that Suzanne's actions were not intended to avoid a duty to Ceco and, further, that her actions were not the cause of the harm to Ceco. As explained above (and as Ceco concedes), it was not impermissible for Bedrock to provide *some* compensation to Suzanne, given her role in being Bedrock's sole representative as to the performance of six contracts. Moreover, from a shareholder's perspective, and Suzanne was Bedrock's only shareholder, it is at best for Ceco a factual question of whether it would be beyond the pale for Bedrock to cover Suzanne's living expenses, where she had elected to forego a salary despite being the sole representative of Bedrock's interests in Hawaii. Furthermore, Suzanne's testimony was that, even before Ceco approached her husband with an offer of employment, "Bedrock ended up paying almost all of the expenses related to Bedrock performing work . . . in Hawaii," including "many of the living expenses of my husband and I." Her testimony suggests that Bedrock covering Suzanne's living expenses constituted "business as usual," which militates against a finding that Suzanne intended to raid Bedrock in order to avoid debts to Ceco.

What is more, Ceco has not shown, as a matter of law, that Suzanne's actions were the cause of Bedrock's inability to pay Ceco in the amount awarded by the arbitrator. The mere fact that Bedrock was subsequently unable to pay Ceco in full does not meet the standard of injustice required to impose the exceptional remedy of corporate disregard. Truckweld, 26 Wn. App. at 644-45. Corporations become insolvent for reasons other than shareholder plundering. In this instance, after Alan agreed to work for Ceco, Bedrock lost its project

manager and, eventually, sold its equipment. Consequently, Bedrock ceased to provide flatwork services and, at a certain point, stopped taking in revenue. Nevertheless, at the time when judgment was entered against it in 2013, Bedrock continued to stay in business. A rational trier of fact could find, based on the evidence in the record, that Bedrock became unable to pay Ceco as a result of events that were unrelated to Bedrock's payment of some of Suzanne's living expenses.[6, 7]

## III

Suzanne next contends that the trial court erred in awarding attorney fees and costs to Ceco. This is so, she asserts, because the basis for the award—Ceco's claim of breach of fiduciary duty—was untenable. We agree. Because we reverse the grant of summary judgment in favor of Ceco, we also reverse the award of attorney fees and costs in favor of Ceco.[8]

---

[6] Because the trial court erred in piercing Bedrock's corporate veil, its grant of summary judgment for Ceco on its claims of breach of fiduciary duty and unjust enrichment is reversed. Ceco does not dispute this with regard to its unjust enrichment claim. However, as to its claim of breach of fiduciary duty, Ceco maintains that "a director or officer can owe . . . fiduciary duties directly to a creditor where, as here, the corporation is insolvent and the director or officer approves a transaction that benefits a corporate insider at the expense of the creditor." Br. of Resp't at 25. However, Ceco has not shown that Bedrock was insolvent at the time of the payments to Suzanne. Thus, resolution of its breach of fiduciary duty claim must abide further proceedings.

[7] Because questions of material fact are at issue, we affirm the trial court's denial of Suzanne's motion for summary judgment.

[8] Ceco asserts that, as the prevailing party in the trial court and on appeal, it is entitled to an award of attorney fees on appeal. Ceco is not the prevailing party on appeal. Thus, we deny its request.

Affirmed in part, reversed in part, and remanded.

We concur: