[No. 22064-4-II.    Division Two.    August 20, 1999.]

ROGERSON HILLER CORPORATION, ET AL., *Appellants*, v. THE PORT OF PORT ANGELES, ET AL., *Defendants*, NORTHWEST COMPOSITES, INC., ET AL., *Respondents*, MICHAEL J. ROGERSON, ET AL., *Appellants*.

*Charles Kenneth Wiggins* and *Kenneth W. Masters* of *Wiggins Law Office*, for appellants.

*Malcolm L. Edwards, Catherine Wright Smith*, and *Howard Mark Goodfriend* of *Edwards, Sieh, Smith & Goodfriend, P.S.*; and *Bruce W. Hilyer* of *Law Offices of Bruce W. Hilyer*, for respondents.

ARMSTRONG, J. — Michael Rogerson is the sole shareholder of Rogerson Aircraft Corporation (RAC). RAC, in turn, is the sole shareholder in several related aircraft corporations. One of these corporations, Aerocomposites, leased space from the Port of Port Angeles. The Port ousted Aerocomposites when it failed to make lease payments. The Port also seized equipment in the leased space and, after obtaining a judgment for back rent, scheduled a sheriff's sale of the equipment. At the sale, a representative of Rogerson announced to the assembled crowd that the equip-

ment was actually owned by Aerobond, another Rogerson corporation, and that Michael Rogerson personally had a security interest in the equipment. Nevertheless, Northwest Composites, Inc. purchased the equipment at the sheriff's sale for $180,000. Aerobond and Rogerson Hiller, another Rogerson corporation, then sued the Port, the sheriff, and Northwest Composites to recover the equipment. After an advisory jury found that Aerocomposites owned the equipment, the trial court ruled that the separate legal status of Rogerson and his corporations would be disregarded; accordingly, Rogerson's security interest was extinguished by merging with the corporations' fee ownership of the equipment. Finally, the trial court awarded attorney's fees against the corporations and Michael Rogerson for bad faith in maintaining the actions. We reverse the trial court's judgment extinguishing Rogerson's security interest and the award of attorney's fees. But we remand for a hearing on whether Rogerson and the Port intended to include Rogerson's security interest in his release of any claim to title to the equipment.

## FACTS

In 1975 Michael Rogerson started RAC, which soon acquired or created other aircraft industry corporations, including Rogerson Hiller, Aerocomposites, and Aerobond. The corporations had the same officers and directors. And the trial court found that the corporations mingled their finances, banking transactions, employee savings plans and inventories. The court also found that Michael Rogerson "dominated the Rogerson Group" and disregarded the separation between corporations and himself.

In 1985, the Port of Port Angeles and Rogerson contracted for the "composites division" of Rogerson Aircraft to be located in Port Angeles. The Port issued industrial revenue bonds to build a plant and acquire equipment for manufacturing operations. Aerocomposites, Rogerson Hiller, and Aerobond then leased space and acquired equipment through RAC with the bond funds.

The Tokai Bank of California financed all of Rogerson's corporations. In 1990, the bank extended credit to the corporations in the amount of $13.5 million. Michael Rogerson personally guaranteed the loans and had signature authority on the loans and various revolving accounts. Tokai also took security interests in the Rogerson corporations' assets, including the equipment in Aerocomposites' possession in Port Angeles.

In 1994, the Port gave notice to the Rogerson entities located in Port Angeles to vacate. Rogerson Hiller and Aerobond sold assets in their possession to pay creditors. Aerocomposites was closed by the sheriff on July 18, 1994, and the Port seized the assets remaining in Aerocomposites possession. The Port obtained an unlawful detainer judgment against Aerocomposites on October 27, 1994, in the amount of $248,562.82 (excluding attorney's fees).

The Port then scheduled a sheriff's sale of the equipment to satisfy the judgment for unpaid rent. Before the sale, the Port attempted to purchase the Tokai Bank's security interest in the equipment. Instead, Tokai Bank transferred its security interest to Rogerson personally. The transfer was part of a larger resolution of credit agreements in which RAC assigned Tokai its expected interest in $800,000 in proceeds from an escrow account with an RAC customer in exchange for a $600,000 loan from Tokai. Rogerson sent Tokai two checks dated November 21, 1994 and December 9, 1994, each for $25,000. The checks were returned with a letter stating that Tokai was still awaiting the assignment of the escrow funds. The checks were again sent to Tokai on January 19, 1995, the date of the sheriff's sale, and were endorsed by the bank on January 20, 1995. The "Assignment" agreement was dated December 14, 1994. The trial court found that Rogerson personally borrowed the $50,000 from RAC without adequate documentation, that Rogerson had no intention of foreclosing against the equipment, that the underlying loan from Tokai substantially exceeded Rogerson's payment, and that Rogerson purchased the security interest to avoid payment of the Port's judgment.

The day before the sale, Aerocomposites and Rogerson Hiller's corporate counsel wrote the Port that the assets the Port intended to sell at the sheriff's sale were not owned by Aerocomposites. And at the sheriff's sale, Rogerson Group attorney Lawrence Hard announced that (1) many items listed were not the property of Aerocomposites, (2) that Tokai Bank had a preexisting security interest in the property, and (3) that the security interest had been assigned to Michael Rogerson. Northwest Composites, Inc., submitted the winning bid of $180,000.

On January 30, 1995, Rogerson Hiller and Aerobond sued the Port, Northwest Composites and others for declaratory relief, conversion, and replevin. Northwest joined Michael Rogerson and Aerocomposites, alleging that the Rogerson group's corporate form should be disregarded.

A jury found that Aerocomposites owned the equipment and that Michael Rogerson was not a "bona fide purchaser" of the security interest. The trial court disregarded the corporate entity and ruled that Rogerson was precluded by the doctrine of merger from enforcing any security interest in the equipment. The court awarded the Port a judgment in the amount of $229,500; Rogerson and the Port later settled the Port's judgment.

The trial court awarded Northwest Composites attorney's fees against Rogerson Hiller, Aerobond, and Michael Rogerson in the amount of $244,135. This award was based upon Rogerson's "bad faith" in pursuing the claim after Aerocomposites filed its 1994 California corporate tax return (filed on December 20, 1995). The tax return showed that Aerocomposites took a deduction for a "seizure of assets" in the exact amount of the purchase price of the equipment sold at the sheriff's sale. Although Rogerson contended that the entry did not refer to the Port Angeles assets, the trial court found that it did and that prosecuting a claim of corporate ownership by Rogerson Hiller after Aerocomposite took the deduction conclusively established Rogerson's bad faith.

The Port and Rogerson then settled and Rogerson and

his corporations waived "any claim to title to all property which has been the subject of this litigation . . . ." On appeal, Rogerson contends that the trial court erred in disregarding the corporate form, extinguishing Michael Rogerson's security interest, and awarding attorney's fees for "bad faith."

## ANALYSIS
### A. Piercing the Corporate Veil

The trial court disregarded the separate legal status of Rogerson and his various corporations: (1) to award attorney's fees against Michael Rogerson personally, as well as Rogerson Hiller and Aerobond; and (2) to extinguish Rogerson's claimed security interest in the equipment by merging the security interest Rogerson got from Tokai with the fee ownership of the equipment held by one of Rogerson's corporations.

■■ Corporate disregard requires proof of two elements: "First, the corporate form must be intentionally used to violate or evade a duty; second, disregard must be 'necessary and required to prevent unjustified loss to the injured party.' " *Meisel v. M&N Modern Hydraulic Press Co.*, 97 Wn.2d 403, 410, 645 P.2d 689 (1982) (quoting *Morgan v. Burks*, 93 Wn.2d 580, 587, 611 P.2d 751 (1980)). The first element requires a finding of an abuse of the corporate form. *Id.* at 410. The second element requires that the abuse caused harm to the party seeking relief so that disregarding the corporate form is necessary. *Id.*

In disregarding the corporate form, the court exercises its equitable powers. *Truckweld Equip. Co. v. Olson*, 26 Wn. App. 638, 643, 618 P.2d 1017 (1980); *see also* Thomas V. Harris, *Washington's Doctrine of Corporate Disregard*, 56 WASH. L. REV. 253, 263 (1981). We review the facts underlying corporate disregard for substantial evidence. *Truckweld*, 26 Wn. App. at 643. But we review de novo the legal conclusions drawn to support corporate disregard. Harris, *supra* at 271-75.

■ ■ Rogerson does not challenge the sufficiency of the evidence. Rather, he argues, in part, that the trial court erred in disregarding the corporate entity because neither he nor any of his entities owed a duty to Northwest. The trial judge concluded that "Rogerson and the Rogerson group owed a duty to the Port, Sheriff and Northwest Composites not to misuse the corporate form of the Rogerson Group." We disagree.

" '[D]uty may arise from common law and equity, contract or statute.' " *Morgan Bros., Inc. v. Haskell Corp.*, 24 Wn. App. 773, 778, 604 P.2d 1294 (1979) (quoting Charles Horowitz, *Disregarding the Entity of Private Corporations*, 15 WASH. L. REV. 1, 11 (1940)). In *J.I. Case Credit Corp. v. Stark*, 64 Wn.2d 470, 478, 392 P.2d 215 (1964), the corporate forms of a machinery manufacturer and its wholly owned financing corporation were disregarded to enforce a contract warranty to the machinery purchaser. In *Culinary Workers & Bartenders Union, Local No. 596 v. Gateway Cafe, Inc.*, 91 Wn.2d 353, 366-67, 588 P.2d 1334, 642 P.2d 403 (1979), the corporate form was disregarded to enforce a contract between the disregarded corporation and a union. In *Morgan Bros.*, although not discussed, the duty owed was based upon a personal injury tort judgment against the corporation. *See Morgan Bros.*, 24 Wn. App. at 774, 778-79.

Although Aerocomposites owed the Port a duty under the lease to pay rent, Northwest was not a party to that contract and had no rights under the contract. In addition Northwest was not misled by any of Rogerson's financial manipulations because it was not aware of them. And, Northwest claims no misrepresentation as to the security interest assigned to Rogerson by Tokai. Indeed, Northwest was told of the claimed security interest before it bid on the equipment. Moreover, although Rogerson may have acquired the security interest by manipulating the loan agreement with Tokai, the security interest was a valid, properly recorded interest.

But Northwest argues that it was a creditor of Aerocom-

posites and duty flows from this relationship. Duty has been found in favor of a creditor and the corporate form disregarded where necessary to prevent a fraud on the creditors. *See Roderick Timber Co. v. Willapa Harbor Cedar Prods., Inc.*, 29 Wn. App. 311, 315, 627 P.2d 1352 (1981). But here, Northwest's status as creditor was totally unrelated to its purchase of equipment at the sheriff's sale. Northwest did not bid at the sale in its role as creditor. Further, any wrongful depletion of Aerocomposites' corporate assets to the detriment of creditors was not the cause of harm to Northwest from the sale. That harm was caused solely by the security interest on the equipment.

The trial court's conclusion that the duty arose from the misuse of the corporate form simply eliminates the essence of the first element of corporate disregard, misuse of the corporate form to *avoid a duty* owed to another. *See Meisel*, 97 Wn.2d at 410. If duty were to arise from abuse of the corporate form alone, the second part of the first element, "to avoid a duty owed," would be redundant. Duty would always be created by an abuse of the corporate form such as commingling of the corporate interests. But the law requires a showing of both disregard of the corporate form *and* that the disregard was done to avoid a duty owed to another. *Morgan*, 93 Wn.2d at 585; *see Meisel*, 97 Wn.2d at 410. We conclude that because neither Rogerson nor any of his corporations owed a duty to Northwest as a purchaser at the sheriff's sale, the trial court erred in disregarding the corporate forms of the various Rogerson entities to extinguish the security interest transferred by Tokai Bank to Rogerson.[1] Because of our decision on corporate disregard, we need not discuss the issues raised as to merger.

## B. Attorney's Fees

### 1. Bad Faith

"Attorney fees may be awarded only if authorized by

---

[1]Because the issue is not before us, we express no opinion as to the value of the security interest, i.e., whether it is the $50,000 paid for it or the $150,000 recited in the purchase agreement.

'contract, statute or recognized ground in equity'." *Bowles v. Department of Retirement Sys.*, 121 Wn.2d 52, 70, 847 P.2d 440 (1993) (quoting *Painting & Decorating Contractors of Am., Inc. v. Ellensburg Sch. Dist.*, 96 Wn.2d 806, 815, 638 P.2d 1220 (1982)). The parties concede that no statute or contract authorizes an award of attorney's fees. But the trial court awarded fees on the equitable grounds of Rogerson's "bad faith."

Although a number of cases have questioned the existence of bad faith as a basis of an attorney's fee award,[2] the Washington Supreme Court has recently confirmed that "bad faith litigation can warrant the equitable award of attorney fees." *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 267 & n.6, 961 P.2d 343 (1998) (citations omitted). But Washington case law provides little precedent for what constitutes bad faith.

In the federal courts, three types of bad faith conduct have warranted attorney's fees: (1) prelitigation misconduct; (2) procedural bad faith; and (3) substantive bad faith. Jane P. Mallor, *Punitive Attorneys' Fees for Abuses of the Judicial System*, 61 N.C. L. Rev. 613, 632-46 (1983); M. Brinkley Morse, Note, *Attorneys' Fees—Nemeroff v. Albeson and the Bad Faith Exception to the American Rule*, 58 Tul. L. Rev. 1519, 1524 (1984).

Prelitigation misconduct refers to "obdurate or obstinate conduct that necessitates legal action" to enforce a clearly valid claim or right. Mallor, *supra* at 632; *see also* Jay E. Rosenblum, *The Appropriate Standard of Review for a Finding of Bad Faith*, 60 Geo. Wash. L. Rev. 1546, 1549 (1992). For example, the Fourth Circuit awarded attorney's fees for bad faith to a class of children and their parents when they were forced to sue the school district to implement desegregation following *Brown v. Board of Educa-*

---

[2]*Dempere v. Nelson*, 76 Wn. App. 403, 407, 886 P.2d 219 (1994); *see Miotke v. City of Spokane*, 101 Wn.2d 307, 338, 678 P.2d 803 (1984); *ASARCO v. Air Quality Coalition*, 92 Wn.2d 685, 716, 601 P.2d 501 (1979); *Malarkey Asphalt Co. v. Wyborney*, 62 Wn. App. 495, 509 n.2, 814 P.2d 1219, 821 P.2d 1235 (1991).

*tion.*[3] *Bell v. School Bd.*, 321 F.2d 494, 500 (4th Cir. 1963).
The award of attorney's fees for prelitigation misconduct
can be compared to a "remedial fine[] imposed by a court
for civil contempt" in that the party acting in bad faith is
wasting private and judicial resources. Mallor, *supra* at
633. This type of bad faith was recognized, but not applied,
by our Supreme Court in *State ex. rel. Macri v. City of Bre-
merton*, 8 Wn.2d 93, 105, 111 P.2d 612 (1941) (quoting *Guay
v. Brotherhood Bldg. Ass'n*, 87 N.H. 216, 177 A. 409, 413,
97 A.L.R. 1053 (1935)).

Procedural bad faith is unrelated to the merits of the
case and refers to "vexatious conduct during the course of
litigation." Mallor, *supra* at 644. In *Lipsig v. National
Student Mktg. Corp.*, 663 F.2d 178, 181 (D.C. Cir. 1980),
bad faith attorney's fees were upheld against a plaintiff for
dilatory tactics during discovery, failure to meet filing
deadlines, misuse of the discovery process, and misquoting
or omitting material portions of documentary evidence.
The purpose of this type of award is "to protect the ef-
ficient and orderly administration of the legal process."
Mallor, *supra* at 644. In *State v. S.H.*, 95 Wn. App. 741, 977
P.2d 621 (1999), Division One recognized that this type of
bad faith could support the award of attorney's fees:

> [W]e hold that a trial court's inherent authority to sanction
> litigation conduct is properly invoked upon a finding of bad
> faith. A party may demonstrate bad faith by, inter alia, delay-
> ing or disrupting litigation. *Chambers v. NASCO, Inc.*, 501
> U.S. 32, 46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). The
> court's inherent power to sanction is "governed not by rule or
> statute but by the control necessarily vested in courts to man-
> age their own affairs so as to achieve the orderly and expedi-
> tious disposition of cases." [*Chambers*, 501 U.S.] at 43 (citation
> omitted). Sanctions may be appropriate if an act affects "the
> integrity of the court and, [if] left unchecked, would encourage
> future abuses." *Gonzales v. Surgidev Corp.*, 120 N.M. 151, 899
> P.2d 594, 600 (1995)[.]

*S.H.*, 95 Wn. App. at 747.

---

[3]*Brown v. Board of Educ.*, 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 873, 38
A.L.R.2D 1180 (1954).

Substantive bad faith, the type alleged here, occurs when a party intentionally brings a frivolous claim, counterclaim, or defense with improper motive. Mallor, *supra* at 638, 641-42; *see Pearsall-Stipek*, 136 Wn.2d at 267. In *Pearsall-Stipek*, the trial court awarded attorney's fees for bad faith to an elected official who was the subject of five recall petitions. The petitioner submitted one recall petition based on charges that were held to be insufficient in a prior judicial proceeding and another petition based on new charges that were also held to be insufficient. *Id*. at 259, 265. While recognizing that the court's "inherent equitable powers authorize the award of attorney fees in cases of bad faith," the Supreme Court reversed the fee award because there was no finding of "bad faith." *Id*. at 267. Bringing a frivolous claim is not enough, there must be evidence of an "intentionally frivolous [claim] brought for the purpose of harassment." *See id*. at 266-67.[4] Because there was no finding of improper motive, the trial court abused its discretion in awarding fees. *Id*. at 267.

Here, the trial court found that "the tax deduction taken by Aerocomposites . . . was inconsistent with the position taken by Michael Rogerson and the Rogerson Group on the central issue in this litigation[,]" the ownership of the equipment. Based on this finding and "a pattern of disregard for the separation of corporate entities" the trial court concluded that Rogerson acted in bad faith. We disagree.

Because we have held that Rogerson owed no duty to Northwest to maintain a separation between the corporate entities, Rogerson's alleged misuse of the corporate form cannot be the basis for a bad faith award of attorney's fees. Thus, the sole issue is whether claiming that Rogerson Hiller owned the equipment, while simultaneously filing a

---

[4]Under RCW 4.84.185, the prevailing party in a civil action is entitled to attorney's fees if the trial court enters written findings that the action was "frivolous and advanced without reasonable cause." But this statute was held to be inapplicable to recall petitions given the cost prohibition in RCW 29.82.023. *See Pearsall-Stipek*, 136 Wn.2d at 266.

tax return that took a deduction for "seizure of corporate assets" on behalf of Aerocomposites, constitutes bad faith.

The issue of ownership of the equipment was hard fought. Ultimately the trial court, believing that the California income tax return impeached Rogerson, rejected his claim that Rogerson Hiller owned the equipment. But nothing in the trial court's decision indicates that Rogerson brought a frivolous claim of ownership to harass Northwest or for other improper motive. In fact, Rogerson's witnesses attempted to explain that the equipment mentioned in the tax return was not the equipment at issue. The trial court did not find the testimony credible. But many if not most trials turn upon which party is the most credible. And this decision frequently comes down to deciding that a party is simply not believable on the principal issue. The conduct here does not rise to the level of bad faith required by *Pearsall-Stipek*. We recognize that the trial court did not have the benefit of the *Pearsall-Stipek* decision, but based on that decision we conclude that the trial court abused its discretion in awarding attorney's fees for bad faith.

2. <u>ABC Theory</u>

Alternatively, Northwest contends that they are entitled to attorney's fees under the equitable "ABC" doctrine. The elements of this claim are: "(1) a wrongful act or omission by A toward B; (2) such act or omission exposes or involves B in litigation with C; and (3) C was not connected with the initial transaction or event, *viz.*, the wrongful act or omission of A toward B." *Manning v. Loidhamer,* 13 Wn. App. 766, 769, 538 P.2d 136 (1975).

According to Northwest, "Rogerson wrongfully asserted an interest in the equipment acquired by Northwest Composites at the sheriff's sale in this declaratory judgment action. As a result, Northwest Composites was forced to both defend and to assert its paramount title to the equipment in litigation with Rogerson Hiller and Aerocomposites."

This argument confuses the roles of the parties. Rogerson did not claim to own the equipment. Rogerson Hiller

claimed ownership. And this claim was made directly against Northwest. No third party was involved, and Rogerson cannot be considered a third party because, to the extent he was involved in this claim, it was on behalf of Rogerson Hiller. Similarly, Rogerson's claim was to a security interest in the equipment and no third party was involved in that claim.

We conclude that Northwest is not entitled to an award of attorney's fees under either of the equitable theories of bad faith or the ABC doctrine. But we remand for a hearing by the trial court on the issue of what the Port and Rogerson intended in their settlement. Rogerson argues that his release of any claim to title to the property does not include the security interest. Northwest contends that the language clearly includes the security interest and that Rogerson waived any claim to the security interest. We cannot resolve the issue on the language of the document alone. The intent of the parties must be determined by the circumstances surrounding execution of the agreement. *See Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990). Although Northwest was not a party to the agreement, Northwest and the Port dismissed mutual cross-claims in reliance on the agreement. Under these circumstances, Northwest is entitled to a hearing on the question of what was intended by Rogerson and the Port in their settlement agreement.

We reverse the judgment extinguishing Rogerson's security interest in the equipment and the award of attorney's fees to Northwest. We remand for a hearing to determine the intent of the parties to the settlement agreement between the Port and Rogerson. If the court finds that the parties intended to include the security interest in the settlement, Rogerson will have released or waived any claim to a security interest in the equipment Northwest purchased.

B<small>RIDGEWATER</small>, C.J., and S<small>EINFELD</small>, J., concur.

Review denied at 140 Wn.2d 1010 (2000).