FILED
7/29/2024
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DON LIONETTI and JULIE LIONETTI, a married couple, | No. 86007-1-I |
| Appellants/Cross-Respondents, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| THE SHRIRAM FAMILY REVOCABLE TRUST, a Washington State Trust; and SHRIRAM SANTHANAM and NITYA THIY AGARAJAN, a married couple and Trustees of The Shriram Family Revocable Trust, | |
| Respondents/Cross-Appellants. | |

COBURN, J. — Don and Julie Lionetti appeal from the dismissal of their claims against The Shriram Family Revocable Trust and Shriram Santhanam and Nitya Thiyagaran (collectively "the Trust") for violation of the restrictive covenants for a Woodridge neighborhood in which both of their homes are located. The Lionettis assert that the trial court erred by granting the Trust's motion for summary judgment because there was a material issue of fact concerning the intent of the drafters. On cross-appeal, the Trust asserts that the trial court erred by denying its request for attorney fees and for the cost of a mediator. We disagree with both parties' assertions of error and affirm.

FACTS

The Lionettis are owners of a property located at 12136 SE 22nd Street in Bellevue, Washington. The Trust is the owner of a property located at 12131 SE 21st Street in Bellevue, Washington. Both properties have views or partial views of the Seattle and Bellevue skylines and the Olympic Mountains. Both properties are located in the Woodridge neighborhood subject to the same set of restrictive covenants.[1] One of these covenants restricts the roof pitch of all structures to no more than "4-½ feet in elevation for each 12 feet of horizontal distance."

Contained in the restrictive covenants applicable to both parties is a provision which states:

> The Committee's approval or disapproval as required in these covenants, shall be in writing. In the event the committee, or its designated representative fails to approve or disapprove within thirty days after plans have been submitted to it, or in the event no suit to enjoin the construction has been commenced prior to completion thereof, approval will not be required and the related covenants shall be deemed to have been fully complied with. No structure shall be built on any residential lot until the owner shall have submitted to the Architectural Control Committee two copies each of the Plans and Plot Plan of said structure, and the Architectural Control Committee shall have the authority and jurisdiction to require such modification in said plot plans and/or plan as may be necessary to make said proposed structure comply with the terms of these protective covenants.

"The Committee" in this covenant refers to the Architectural Control Committee, which

---

[1] These covenants were initially executed in 1958 by the owner, a builder, of all the real property in "Woodridge, Division No. 4." The document provides:
These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five years from date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of ten years, unless an instrument signed by a majority of the then owners of lots has been recorded, agreeing to change said covenants in whole or in part.

both parties agree is long defunct.

In August 2022, the Trust began construction on a home renovation project, which included a new addition to the home. In October 2022, the Leonettis noticed the construction included an addition on top of the roof and met with the project contractor. The construction work was completed on November 3, 2022. On December 7, 2022, the Leonettis filed suit against the Trust for violation of the restrictive covenant concerning roof pitch and for declaratory judgment.

The Trust moved for summary judgment, asserting that Leonetti's suit was barred by the covenant decreeing that "in the event no suit to enjoin the construction has been commenced prior to completion thereof, approval will not be required and the related covenants shall be deemed to have been fully complied with." Leonetti responded that this provision is part of a covenant that concerned the Committee and construing it to apply to other homeowners would run contrary to the intent of the drafters. The trial court agreed with the Trust and granted summary judgment in its favor.

The Trust requested attorney fees and costs for defending against the Leonetti's suit. The trial court awarded costs to the Trust but denied its request for attorney fees.

Lionetti appeals the summary judgment order dismissing the lawsuit. The Trust cross-appeals the trial court's denial of attorney fees.

DISCUSSION

The Restrictive Covenant

A. *Standard of Review*

The Leonettis assert that the trial court erred by granting summary judgment in favor of the Trust. We review summary judgment orders de novo. Strauss v. Premera

3

Blue Cross, 194 Wn.2d 296, 300, 449 P.3d 6450 (2019). Summary judgment is properly granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Neighbors v. King County, 15 Wn. App. 2d 71, 80, 479 P.3d 724 (2020); CR 56(c).

Interpretation of a restrictive covenant presents a question of law, to which we apply the rules of contract interpretation. Wilkinson v. Chiwawa Communities Ass'n, 180 Wn.2d 241, 249, 327 P.3d 614 (2014) (citing Wimberly v. Caravello, 136 Wn. App. 327, 336, 149 P.3d 402 (2006)). The court's objective in interpreting restrictive covenants is to determine the intent of the drafters. Wilkinson, 180 Wn.2d at 250; Riss v. Angel, 131 Wn.2d 612, 621, 934 P.2d 669 (1997). In discerning the intent of the drafters, we give language its plain and ordinary meaning. Riss, 131 Wn.2d at 621. Summary judgment is proper if the language has only one reasonable meaning. Wm. Dickson Co. v. Pierce County, 128 Wn. App. 488, 494, 116 P.3d 409 (2005) (citing Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 83, 60 P.3d 1245 (2003)).

*B. The Leonettis' Claims were Barred by the Restrictive Covenants Governing Their Property.*

The Leonettis assert that the trial court should not have granted summary judgment to the Trust. The Leonettis contend that a material issue of fact exists concerning the intent of the covenants' original adoptees.

Both the Leonettis' and the Trust's properties are governed by a restrictive covenant that states, in relevant part:

> In the event the committee, or its designated representative fails to approve or disapprove within thirty days after plans have been submitted to it, or in the event no suit to enjoin the construction has been commenced prior to completion thereof, approval will not be required and the related covenants shall be deemed to have been fully complied with.

4

The trial court dismissed the Leonetti's claims under this covenant because they did not file suit before construction of the allegedly offending structure was completed.

Contrary to the Leonetti's argument, there is no issue of material fact because the intent of the covenant is clear from its plain language. The covenant plainly states that if the committee has not taken action within 30 days (which it did not) and if no suit was filed before construction is completed (which it was not), then "the related covenants shall be deemed to have been *fully complied with*." (Emphasis added.) This covenant provides a complete defense to any suit filed after completion of a structure, even if that structure would otherwise be noncompliant with the restrictive covenants that require approval of the Architectural Control Committee. The trial court did not err by applying this covenant to dismiss the Leonettis' claims.

The Leonettis nonetheless assert that the evidence they produced of newspaper advertisements from the 1950s creates an issue of fact concerning the intent of the drafters. Extrinsic evidence cannot be used to modify the plain language of a restrictive covenant and it is not proper for the court to consider "'[e]vidence that would vary, contradict or modify the written word.'" Wilkinson, 180 Wn.2d at 251 (alteration in original) (quoting Hollis v. Garwall, Inc., 137 Wn.2d 683, 695, 974 P.2d 836 (1999)). Here, we need not look beyond the language of the covenant because it is not ambiguous.

The Leonettis suggest that the covenant was only intended to apply to suits filed by the Architectural Control Committee, as the remainder of the paragraph directs homeowners to submit construction plans to the Committee for approval. The Leonettis' suggestion of an alternate meaning to the covenant does not render the covenant

5

ambiguous or create a question of fact. GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 135, 317 P.3d 1074 (2014). The plain language of the covenant does not limit its application solely to suits commenced by the Architectural Control Committee itself. We will not read language into a contract provision that is not already there.

The Leonettis additionally point to the following covenant as establishing their right to sue regardless of the date of completion of construction:

> If the parties hereto, or any of them or their heirs or assigns, shall violate or attempt to violate any of the covenants herein, it shall be lawful for any other person or persons owning any real estate situated in said development or subdivision to prosecute any proceedings at law or in equity against the person or persons violating, or attempting to violate, any such covenants and either to prevent him, or them, from so doing or to recover damages or other dues for such violation.

This covenant grants standing to the Leonettis and their neighbors for violation of the restrictive covenants. This is an entirely separate issue from whether the Trust can be found to have violated the restrictive covenants that are subject to approval of the Architectural Control Committee, a question which is separately answered by the covenant deeming all *related covenants* "to have been fully complied with" if suit is not initiated before completion of construction.

Finally, the Leonettis assert that reading the covenant as conclusive of the Trust's nonliability creates an incentive whereby neighbors will have to "race to the courthouse" if they believe an ongoing project violates the restrictive covenants. We note that the restrictive covenants provide that "a majority of the then owners of lots" can agree to "change said covenants in whole or in part." Furthermore, the restrictive covenants also provide that if former committee members have not been replaced, "then owners of lots in this addition shall appoint three of their number to serve as the

6

membership of this committee." The covenants provide Woodridge property owners, including the Leonettis, pathways to resurrect the Architectural Control Committee and/or change the restrictive covenants in whole or in part.

As of now, the covenant plainly states that a structure shall be deemed to be in compliance with the related restrictive covenants if no suit is filed before completion of construction, thus providing a complete defense to the Trust. Accordingly, the trial court did not err by granting summary judgment to the Trust and dismissing the Leonettis' claims.

Attorney Fees and Costs

A. *Fees in the Trial Court Proceedings.*

The Trust asserts that the trial court erred by failing to award it attorney fees for prevailing on summary judgment. The Trust contends that fees were awardable under the restrictive covenants and as a matter of equity.

We apply a two-part review to a trial court's decision on attorney fees:

> (1) we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fees award for an abuse of discretion.

Falcon Properties LLC v. Bowfits 1308 LLC, 16 Wn. App. 2d 1, 11, 478 P.3d 134 (2020) (citing Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012)).

The Trust first contends that attorney fees were awardable under the terms of the restrictive covenants. The restrictive covenants state that a homeowner who files suit for violation of the covenants may "recover damages or other dues for such violation." The Trust contends that the word "damages" encompasses attorney fees. Washington adheres to the American rule that "attorney fees are not available as *costs or damages*

7

absent a contract, statute, or recognized ground in equity." City of Seattle v. McCready, 131 Wn.2d 266, 275, 931 P.2d 156 (1997). The restrictive covenants do not define "damages" to include attorney fees; indeed, the restrictive covenants make no mention of attorney fees at all. The Trust is therefore not entitled to attorney fees under the covenants.

The Trust asserts that it nevertheless is entitled to fees as a matter of equity. Our Supreme Court has recognized four equitable grounds for an award of attorney fees: bad faith conduct of the losing party, preservation of a common fund, protection of constitutional principles, and private attorney general actions. McCready, 131 Wn.2d at 274; Public Utility District No. 1 of Snohomish County v. Kottsick, 86 Wn.2d 388, 390-92, 545 P.2d 1 (1976). The Trust relies upon the equitable ground of bad faith, alleging that the Leonettis engaged in "oppressive behavior" and "bad faith" by intentionally bringing a frivolous claim.

For fees to be awarded in equity for bad faith, it is not enough that the claim is frivolous. Rather, "there must be evidence of an 'intentionally frivolous [claim] brought for the purpose of harassment.'" Rogerson Hiller Corp. v. Port of Port Angeles, 96 Wn. App. 918, 929, 982 P.2d 131 (1999) (alteration in original) (quoting In re Recall of Pearsall-Stipek, 136 Wn.2d 255, 267, 961 P.2d 343 (1998)). Furthermore, for fees to be awarded on this basis, the trial court must explicitly make a finding of bad faith. Id.; cf. Biggs v. Vail, 124 Wn.2d 193, 201, 876 P.2d 448 (1994) (fees not awardable under CR 11 without express finding that pleading was filed without basis in fact or law or was filed for an improper purpose). The trial court here made no findings that the Leonettis engaged in bad faith or brought an intentionally frivolous claim for the purpose of

8

harassment. In the absence of any such findings, the trial court did not err when it declined to award attorney fees to the Trust on an equitable basis.

*B. Costs for Mediation*

The Trust additionally asserts that the trial court erred by not awarding $3,650.00 in costs for the mediator it claims to have hired. The Trust contends that an award of costs for mediation was nondiscretionary under RCW 4.84.090. We disagree.

RCW 4.84.090 states that in order to recover costs, the moving party must provide proof of their cost disbursements, which "shall be stated in detail and verified by affidavit." The record on appeal does not contain an affidavit or other document signed under the penalty of perjury reflecting the disbursement of $3,650.00 in mediation costs. Without the mandatory documentation, we cannot conclude that the trial court abused its discretion in declining to award the requested mediation costs.

*C. Fees on Appeal.*

The Trust requests an award of fees pursuant to RAP 18.9 for having to respond to a frivolous appeal. An appeal is frivolous if it "presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal." Streater v. White, 26 Wn. App. 430, 434, 613 P.2d 187 (1980). "All doubts as to whether the appeal is frivolous should be resolved in favor of the appellant" and "[a]n appeal that is affirmed simply because the arguments are rejected is not frivolous." In re Marriage of Schnurman, 178 Wn. App. 634, 644, 316 P.3d 514 (2013).

Although we affirm the judgment of the trial court, we cannot say that the Leonetti's appeal was frivolous. The Trust's request for fees is hereby denied.

## CONCLUSION

The trial court did not err by dismissing the Leonettis' claims on summary judgment or by declining to award attorney fees and mediation costs to the Trust. We affirm the judgment of the trial court.

_Cohen, J._

WE CONCUR:

_Hafse, ACJ_

_Dwyer, J._