FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 27, 2025

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 27, 2025

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Recall of<br><br>LATRISHA SUGGS,<br>Position 1, City Council Member;<br>KATE DEXTER,<br>Position 4, Mayor of Port Angeles;<br>NAVARRA CARR,<br>Position 6, City Council Member; and<br>LINDSEY SCHROMEN-WAWRIN,<br>Position 3, City Council Member | No. 103314-1<br><br>EN BANC<br><br><br>Filed: <u>March 27, 2025</u> |

STEPHENS, C.J.—John Worthington filed petitions seeking to recall the mayor of Port Angeles as well as three Port Angeles city council members. Worthington is not a legal voter in Port Angeles, and the issue here is whether he has standing to seek the recall of Port Angeles' elected officials. The superior court held that Worthington lacks standing and dismissed the recall petitions. We affirm.

The Washington Constitution states that an elective public officer is subject to recall "by the legal voters of the state, or of the political subdivision of the state, from which [they were] elected." WASH. CONST. art. I, § 33. The recall statute, RCW 29A.56.110, sets forth the requirements for when "any legal voter of the state or of any political subdivision thereof . . . desires to demand the recall and discharge of any elective public officer of the state or of such political subdivision, as the case

may be." Worthington argues that because he is a legal voter of the state, he may petition to recall a public officer of any political subdivision. This is incorrect. When a recall petition concerns elected public officers of a political subdivision, only legal voters in that political subdivision may seek their recall.

BACKGROUND

John Worthington filed recall petitions for the mayor of Port Angeles as well as three Port Angeles city council members. Worthington does not live in Port Angeles. He is a resident of Sequim. Worthington sought recall of the mayor and council members for several reasons, all centered around the city's membership in the International Council for Local Environmental Initiatives (ICLEI). ICLEI is a global network of local and regional governments focused on improving global sustainability through cumulative local actions. Worthington alleged in his recall petitions that because Port Angeles joined the ICLEI network, the mayor and council members are no longer qualified to hold office because they voluntarily relinquished U.S. citizenship, failed to post bond, and violated the doctrine of incompatible offices.

Counsel for the mayor and council members e-mailed Worthington before the recall hearing in superior court to inform him of their position that he lacked standing because he is not a Port Angeles resident and to request that Worthington dismiss the petitions. Worthington did not do so. Counsel again e-mailed Worthington,

asking if he would agree to a continuance and suggesting they come up with an agreed briefing schedule. Counsel expressly noted that he could not comment on the merits of the case at that time. Counsel later followed up, stating that he was not asking Worthington to give up any of the issues he wished to raise but merely to agree to a briefing schedule. No further agreements were indicated.

At the recall hearing, the superior court focused on standing. The court dismissed the petitions with prejudice on the ground that Worthington is not a legal voter in the city of Port Angeles. The mayor and council members moved for attorney fees, which the court granted. Worthington made several motions, including a motion to strike the mayor and council members' motion for attorney fees under anti-SLAPP (strategic lawsuit against public participation) statutes, a motion for sanctions, and a motion to recuse the judge who had dismissed his petitions, all of which the court denied. The court also denied Worthington's motion for reconsideration. Worthington objected to entry of judgment, but the court overruled his objections and entered judgment for the mayor and council members. Worthington appealed.

## ISSUES

1. Whether a person who is not a legal voter in a political subdivision may seek recall of public officials in that political subdivision.

2.      Whether the mayor and council members are entitled to attorney fees on appeal.

ANALYSIS

1. Worthington Lacks Standing To File This Recall Petition

Washington's constitutional recall provision helps enforce the principle that public officials in a representative democracy should be accountable to their constituents.  Article I, section 33 of the Washington Constitution states, "Every elective public officer of the state of Washington . . . is subject to recall and discharge by the legal voters of the state, or of the political subdivision of the state, from which [they were] elected."  RCW 29A.56.110 outlines the processes for "[w]henever any legal voter of the state or of any political subdivision thereof . . . desires to demand the recall and discharge of any elective public officer of the state or of such political subdivision, as the case may be."

Worthington argues that article I, section 33 allows any legal voter in Washington to initiate a recall of any elected public official in the state, regardless of whether they are eligible to vote for the public official.  Although both the constitution and the statute use the word "or," the disjunctive is not used to indicate that either a legal voter of the state or a legal voter of a political subdivision in the state can recall any elective public officer.  Instead, a natural reading of the provision as a whole is that the word "or" indicates that a legal voter of the state may recall an

elective public officer of the state or a legal voter of a political subdivision may recall an elective public officer of such political subdivision. Accepting Worthington's interpretation would render the words "or of any political subdivision thereof" and "or of such political subdivision, as the case may be" superfluous because every legal voter of a political subdivision in the state is necessarily a legal voter of the state. The language providing further refinement would be unnecessary.

While there are no published cases on this issue, the Court of Appeals came to the same conclusion in the unpublished case *Knedlik v. Snohomish County*. In *Knedlik*, a King County voter petitioned to recall an executive of Snohomish County. No. 71790-1-I, slip op. at 1 (Wash. Ct. App. Mar. 9, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/717901.pdf. The Court of Appeals held that because Knedlik was not a legal voter in Snohomish County, he could not petition to recall a Snohomish County executive. *Id.* The court based its decision on the language of RCW 29A.56.110 and article I, section 33 of the state constitution, concluding that the plain meaning of both was that "only voters from an official's constituency may recall the official." *Id.* at 4. The court also cited *Teaford v. Howard*, 104 Wn.2d 580, 583, 707 P.2d 1327 (1985), which notes that "an officer's constituency can initiate recall proceedings." *Knedlik*, No. 71790-1-I, slip op. at 3-4. We find this reasoning persuasive and hold that only legal voters in

the political subdivision from which a public official was elected may seek recall of that public official.

This reading of the relevant constitutional and statutory language aligns with several of our prior decisions. In *In re Recall of Boldt*, this court declined to reach the issue of whether the petitioner lacked standing to recall a city council member because he did not reside in her district. 187 Wn.2d 542, 556 n.6, 386 P.3d 1104 (2017). In the course of our opinion, however, we noted that the relevant issue for standing purposes is whether "political subdivision" refers to an "officer's constituency," inferring that not every legal voter of the state can recall a local elective public official without regard to their legal authority to vote in the local election. *Id.* Additionally, in *In re Recall of White*, 196 Wn.2d 492, 495, 474 P.3d 1032 (2020), this court stated, "Under our constitution, any legal voter in the political subdivision that elected a person to a legislative or executive office may file a petition to recall that person from office." Though we were not determining a question of standing but merely addressing whether the recall petition in that case was legally and factually sufficient, this language in *White* reflected our understanding of the foundation for the recall power. *Id.* at 502-04. Although neither of these cases issued a holding regarding standing, they support our conclusion that Worthington lacks standing here.

Worthington makes several other standing arguments, which we find unavailing. First, he argues that the mayor and council members "opted out" of their political subdivision and created a two-county political subdivision through the operation of multiple nonprofits on the Olympic Peninsula. However, participation in nonprofits outside of Port Angeles does not somehow create a new political subdivision. Worthington cites no authority supporting this proposition.

Second, he contends that the court should have decided the petitions on the merits because counsel for the mayor and council members agreed to an express contract to hold a hearing on the merits. This misstates the record. The parties did not enter into such a contract. Counsel for the mayor and council members reached out to attempt to secure a continuance and agreed briefing schedule. While counsel noted in an e-mail that entering into an agreed briefing schedule would not mean Worthington had to give up the issues he wished to raise, this acknowledgment did not create a contract wherein counsel agreed to have the petitions decided on the merits.

Lastly, Worthington argues that the mayor and council members waived their standing argument because they sought affirmative relief by requesting sanctions, attorney fees, and entry of judgment. Worthington cites *Grange Insurance Assn. v. State*, 110 Wn.2d 752, 757 P.2d 933 (1988). However, in *Grange*, we addressed that the Court of Appeals had previously discussed whether the defense of lack of

jurisdiction had been waived, and it noted that this defense can be waived by seeking affirmative relief, which invokes the jurisdiction of the court. *Id.* at 765. Even if the defense of lack of standing could be waived in the same way, a proposition Worthington has not established, the mayor and council members did not seek affirmative relief. "Affirmative relief" is "[r]elief for which defendant might maintain an action independently of plaintiff's claim." *Id.* at 765-66 (alteration in original) (quoting BLACK'S LAW DICTIONARY 56 (5th ed. 1979)). Here, the mayor and council members sought attorney fees, sanctions, and entry of judgment, all of which they would not have had a right to if Worthington had not filed the recall petitions.

In conclusion, we affirm the trial court and hold that only legal voters in the political subdivision from which a public official was elected may seek recall of that public official. Unlike other standing doctrines based in common law or statute, this standing requirement is rooted in our state constitution and is designed to uphold constitutional principles concerning the accountability of elective public officers to their constituents. Thus, it cannot be altered by the courts.

2. The Mayor and Council Members Are Entitled to Attorney Fees

The mayor and council members seek attorney fees on appeal pursuant to RAP 18.1 and 18.9 because the recall petition was filed in bad faith. RAP 18.1(a) allows parties to request attorney fees on review if applicable law grants the party the right

to recover reasonable attorney fees. RAP 18.9(a) allows appellate courts to order compensatory damages or sanctions if a party files a frivolous appeal. In recall cases, courts may award attorney fees "when recall petitions are intentionally frivolous and filed in bad faith." *In re Recall of Piper*, 184 Wn.2d 780, 787, 364 P.3d 113 (2015). We have stated that bad faith in this context refers to "'intentionally frivolous recall petitions brought for the purpose of harassment.'" *In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 783, 10 P.3d 1034 (2000) (quoting *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 266, 961 P.2d 343 (1998)).

Here, the superior court awarded attorney fees after it concluded that the recall petitions were intentionally frivolous and filed in bad faith because Worthington knew he was not a legal voter in Port Angeles and knew this was a requirement to seek recall of Port Angeles officials. At the hearing on whether to grant attorney fees, the court stated that it found the petitions frivolous because it appeared Worthington had not done research in determining whether he had standing, and a reasonable inquiry would have included such research. The judge also noted that relevant to frivolousness was the fact that the city's joining of ICLEI was a discretionary act that did not appear to have been done in an unreasonable manner.

The superior court's conclusion is supported by the record. It appears that Worthington knew of the standing issue, as he posted on Facebook that it would take someone from Port Angeles to initiate a recall and that he may need someone from

Port Angeles to sign his petition. Counsel for the mayor and council members also alerted him to the issue early in the case. Given this as well as the fact that he had previously filed several recall petitions for all four officials that were denied, the superior court reasonably concluded that Worthington brought these petitions for the purpose of harassment and awarded fees below. We additionally award the mayor and council members attorney fees on appeal. RAP 18.1.[1]

CONCLUSION

We affirm the superior court's dismissal of the recall petitions because Worthington lacks standing to seek the recall of elective public officers in Port Angeles, as he is not a legal voter in that political subdivision. We grant the mayor and council members' motion for attorney fees on appeal as Worthington's recall petitions were intentionally frivolous and filed in bad faith.

---

[1] Worthington argues the mayor and council members are equitably estopped from seeking attorney fees based on his bad faith because they agreed to allow Worthington to present the issues at the recall hearing. However, as discussed above, there was no such agreement. Instead, counsel for the mayor and council members simply noted in an e-mail that they could agree to a briefing schedule without either party waiving the right to raise issues to the court.

      Worthington also contends that attorney fees cannot be granted where the superior court did not determine the factual and legal sufficiency of his petitions. He cites *Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. 918, 982 P.2d 131 (1999), for this proposition. *Rogerson* did not involve a recall petition. And in *Rogerson*, the Court of Appeals discussed what types of bad faith could warrant attorney fees. *Id.* at 927-29. In doing so, it mentioned *Pearsall-Stipek* and noted that, in that case, filing a frivolous recall petition was not enough to authorize an award of attorney fees because there was no evidence of improper motive. *Id.* at 929. Nowhere in *Rogerson* does it state that a sufficiency determination must be made before attorney fees can be awarded. Here, we award fees on appeal because Worthington's appeal of the dismissal for lack of standing is frivolous.

_____
Stephens, C.J.

WE CONCUR:

_____
Johnson, J.

_____
Yu, J.

_____
Madsen, J.

_____
Montoya-Lewis, J.

_____
González, J.

_____
Whitener, J.

_____
Gordon McCloud, J.

_____
Mungia, J.